Good morning, my name is Ken Dandar from Tampa, Florida. My brother is just to me, Tom Dandar. We are here to address the court on Joanne Kong's claim. In 1964, the Congress passed 28 U.S.C. Section 1332 C.1 to prohibit a federal court from accepting jurisdiction based upon diversity or any other reason when the injured party is suing the liability insurance carrier as a result of the tortfeasor's negligence when the tortfeasor and the injured party are both of the same state. This is exactly what this case is. And I'm beside myself as to why I'm before the Ninth Circuit, except the errors were committed in the Tampa District Court when Allied removed the state court action to federal court based on diversity jurisdiction. You don't have a final judgment in the Florida court, do you? No, the judge in Tampa is waiting for you to decide this case. But waiting for us to decide whether the affirming of the arbitration was correct. Is the issue that you've started addressing right now one that still is ultimately to be resolved in the Eleventh Circuit? Well, I don't know the answer to that because the Tampa court is waiting for the Ninth Circuit to make a decision. And our primary decision here is jurisdiction. That's too bad. I was looking for the answer. But if you say that the Eleventh Circuit needs to decide, I'd be happy to go back to the Eleventh Circuit. They're waiting for a final judgment. We have a final judgment from the Central District, but I don't think the Eleventh Circuit would then have jurisdiction over that. This is one of those most complicated procedural cases I've ever seen. My client's a Florida resident, disabled, sign language is her only language, and she filed a state court action. There is no jurisdiction in any federal court because of 1332C1. It prohibits a court from accepting jurisdiction because the tortfeasor and the injured party are both residents. If you were ultimately successful in Florida or in the Eleventh Circuit in making the determination that there was never jurisdiction there in the first place, doesn't the action in California become a nullity? It does. The same applies here. I would hope that this court would issue an order saying California's Central District Court and the arbitration never had jurisdiction over the Florida resident because the only reason the Florida resident is compelled to come to California is because of the Tampa federal court erroneously stating there is diversity of jurisdiction. And there never can be diversity of jurisdiction because of C1. And this court has held many times and dismissed cases no matter how advanced they have been or how complicated. If the parties, the injured and the tortfeasor, are the same state, there is no jurisdiction even though the insurance company is from out of state. Well, that was true. That may be true in Florida, but with respect to the Central District, there is diversity of jurisdiction. There cannot be diversity of jurisdiction because the Central District relied upon the arbitration and the arbitration relied upon the order from Tampa saying that there is diversity of jurisdiction. In fact, 9 U.S.C. Section 4, the arbitration code, states that the arbitration must take place where the party petitions for arbitration. An allied petitioned for arbitration in the Tampa federal district court. That's where if she was bound by arbitration, the arbitration clause, which violates Florida law, by the way, but if she is, then it has to take place in Tampa. The insurance contract with regard to where arbitration might take place doesn't apply? No. The Karen Ferguson Act says that there is a state statute which is concerning insurance, and we cite several state court cases from Florida. Then there is reverse preemption, and the state law provides the remedy on arbitration. You can't arbitrate an insurance coverage claim, which this was. You can arbitrate that, but it has to take place in the county where the claimant resides, not in California where the insurance company resides. That issue is pending before the 11th Circuit, is it not? No. Not in this case. The 11th Circuit dismissed my appeal because they said it was premature. You have to wait for a final judgment.  I raised a jurisdictional issue. I can't stand here before you right now. You mean the Mayor Karen Ferguson argument. I can't say I raised that right now. My memory doesn't work to tell me. I did raise the 1332C1. But if you got a final judgment in Florida, you would be able to appeal, raise the McCarran-Ferguson argument on appeal there, would you not? If I did, but I think this decision of this Court would serve as some type of res judicata. On McCarran-Ferguson? On all of it, yes. Because I'm raising it now with the same party. But I'm raising it before a Court that I believe ---- But if we decline to hear it, I'm not ---- matters that are not final in the middle district of Florida. But this Court has to address the jurisdictional argument. Well, that we do as to whether there's jurisdiction to enforce the ---- enter an enforcement of the arbitration award, yes. But if the arbitration itself was improvidently, erroneously sent to California based upon a ---- Well, first in Tampa they argued that an assignment of the policy, and therefore there's diversity of jurisdiction. And then when they come over here to California, they say there is no assignment of the policy. It's fraud. They didn't consent to it. And there's no ---- they took two diverse opinions. But everyone's ignoring that, everyone, the lower ---- the arbitrator and the lower court. And the central issue is jurisdiction. You can't have arbitration in California if there's no jurisdiction over the party. My client has never been to California. There are no minimum contacts. They can raise that there's diversity of jurisdiction, which they did. But they raised the arbitration code first, Section 4. And that says it has to go back to where you petitioned for arbitration, and that was in Tampa, not in California. And it's a policy issued in Florida to a Florida resident. It says it's ---- it goes by the Florida law where it's ---- or the state where it's issued. And all the Florida law is against everything that has happened to my client so far in the litigation and the arbitration. This court, as I said, many times ruled on C-1 of 1332. This is the classic case. The court in Tampa said it's not based upon an assignment and it's not a direct action, although we filed only one thing against Allied, a direct action. We can't sue the insurance company in Florida until we have a judgment against their insurer, which we obtained through a stipulation. And the supplemental complaint is a direct action. And this is a direct action. Yet the Tampa court said, no, it's not because you're looking for insurance money. Well, that's exactly what a direct action is. And it's inconceivable how the court did everything it could to go around 1332 C-1, the Tampa court, by saying it's overly broad and, therefore, it doesn't apply to this case, when this is the classic case for C-1 to apply. So although there may be diversity in the arbitration in California, because my client is from Florida and Allied has its place of business in California, that doesn't create the jurisdiction for the arbitration. So when a district court gets it, the district court looks and says, oh, it's from Orange County, so I have jurisdiction. But the court doesn't have jurisdiction because even the petition they filed says it's based upon diversity. And the petition they filed in front of the central district copied everything that happened in Tampa. So all of the jurisdictional issues that Allied relied upon for jurisdiction occurred in Tampa, Florida. Okay. Glad we're here from the other side. You've reserved some time. Good morning, Your Honors. My name is Rick Siegel, and I represent the Apelli Allied Professionals Insurance Company. As we do our research in these cases, occasionally I come across a lawsuit where the reviewing court comments with disdain about the age of the case and comments about how parties sometimes just will not accept the fact that a case is over. Counsel? Yes. Why don't you get to the issue and the case, okay? The issue and the case is diversity jurisdiction. Why don't you address that? The issue in this case is this appeal on the ground brought by the appellant are frivolous. And we will be filing today a motion under federal law. Tell us why. Because three-quarters of the appeal is based on assignments of error regarding the Tampa court, the middle district of Florida. Is there diversity jurisdiction? I'm sorry, Your Honor? Is there diversity jurisdiction? There is diversity in this case. Okay. An action under 9 U.S.C. 9, when an arbitration is conducted within the district, the litigants in the arbitration, the winning party in the arbitration is allowed, pursuant to 9 U.S.C. 9, to bring an action to have that award enforced as an order of the court. That's precisely what we did. The assignments of error regarding the failure of the court. I'm sorry. You said under Section 9. 9 U.S.C. 9. The Federal Arbitration Act expressly provides that when an arbitration is conducted within a district. A district. A party has the right to go to the district in which the arbitration was conducted. Where was it conducted? In Orange County. Okay. The arbitration happened out here. Yes, it did. Okay. So how did the middle district get involved? The lawsuit began as a Florida state court action in Florida. Yes. We removed it to federal court in Florida and brought a motion to compel arbitration. Concurrently, the appellant brought a motion to remand the case back to state court, and the middle district of Florida denied the motion to remand and granted my motion to compel arbitration. The case was then sent here for arbitration pursuant to the terms of the policy, because the insurance policy requires arbitration to be conducted in Orange County, California. Okay. The arbitration was then conducted, and the appellant participated fully in that arbitration. It was done on the briefs. There was no live hearing. But the arbitrator found squarely against the appellant and issued a final award. I then filed a petition with the Central District of California, pursuant to 9 U.S.C. 9, to have that award entered as a judgment of the court. Okay. I think you've answered the question. When the court looks at the totality of the appellant's briefs, both the opening brief and the reply brief, what you see is three-quarters of the issues that are attributed in that brief are attributed to the errors of the Florida court. Under 28 U.S.C. 1294, this court simply doesn't have jurisdiction to rule on the sufficiency, on the propriety of the Florida federal court's orders. As the panel correctly commented to counsel, or at least questioned counsel, if there was any question about the Florida court's rulings, those issues had to have been taken up with the 11th Circuit. The federal case in Florida isn't over. Counsel filed a motion on basically the same grounds as what he brought in the Central District of California to question the diversity ruling in the Florida case. That motion is stayed pending the resolution of the California arbitration case. Once this court rules, then the Florida court will resume its determination of the appellant's motion, will presumably deny that motion, will presumably affirm its earlier rulings, And the appellant is then left with whatever legal, whatever proper remedies he has. And if it's to take an appeal to the 11th Circuit, that's his determination that he needs to make based on his research. Do you have any argument that any of these errors that have been asserted as to the district court in Florida have not been preserved adequately and therefore could not be argued to the 11th Circuit? No, I don't. No, the case is not final in Florida. You can tell me that all of these errors are preserved in Florida. Well, I'm not going to confirm for the appellant that they've done their job. I'm not going to confirm that appellant's counsel has properly litigated the case. And I'm not going to waive any arguments I would make to the 11th Circuit. But in terms of the procedural path of this case. Let me ask a better question. Were all of the issues being raised here, criticizing the actions of the Florida court, were all of those issues raised and discussed before the Florida court? Raised and. Whether adequately or not, I'll leave to another day. Certainly. Thank you. Raised and discussed, no. And the reason I make that distinction is the appellant filed a notice of appeal in the 11th Circuit. And the 11th Circuit, before there was any briefing, dismissed the appeal because it was untimely, because it was premature. The appellant filed a second notice of appeal before the 11th Circuit. And he voluntarily dismissed that because I reminded him that the 11th Circuit said it's premature. So in terms of have they been raised and discussed, no. But the 11th Circuit said these issues are not yet timely to be before us. And. I'm more concerned about the district court level and whether or not they were discussed there. There is a motion pending before the Middle District of Florida regarding virtually all of the issues raised in the Central District of California. The appellant filed concurrent, basically identical motions. The motion filed in the Central District to vacate all of what is being done here filed basically an identical motion in the Florida federal court. And the Florida court stayed that motion, waiting for this case to be finally resolved, at which time the Florida court will resume the process of that case and will rule on the motion. And in my refers to the land misuse of authority.  and Ferguson? In particular, with regard to the McCarran-Ferguson Act issue, was that raised in the district court? Absolutely. And in the order granting my motion to compel arbitration, the federal court in Florida said that the argument by appellant is erroneous, that McCarran-Ferguson does not apply, and that the Federal Arbitration Act is not reverse preempted. That's expressly discussed in the order granting motion. And you're not arguing that if we decline to reach it in this case, if we accept your Section 9 argument, you won't be arguing race judicata or law of the case with respect to that? Well, it's hard for me to – I cannot represent to this Court what arguments I will or will not make depending on how counsel frames an argument to the Eleventh Circuit. I don't know what path you should take on this. I'm asking you how it's postured in this circuit. His concern is having come out here, being forced to come out here under Rule 9, which – or Section 9, because the – you are correct that you can bring it in the central district. Does that mean that we have to decide whether the underlying action is preempted altogether? It not only doesn't mean that you have to, but 28 U.S.C. 1294 says, with all due respect, you can't. Well, that's what I'm asking. So you give me this waffly answer about race judicata, and I'm just – you're saying, well, you don't know whether it would be race judicata. I don't want you going back to Florida and saying, well, you know, the Ninth Circuit, he should have raised that issue in the Ninth Circuit. He had the opportunity. And the Ninth Circuit didn't reach it, but he had the opportunity. Therefore, it's race judicata. You're not going to argue that, are you? The application of race judicata depends on how this Court rules. If the Court rules on the merits of the action and considers the merits of what is raised here, race judicata may attach. If this Court does what I suggest this Court do, which is dismiss the appeal with respect to the Florida issues, then those issues were not resolved on their merits, which is a fundamental element of the application of race judicata. So it all depends on how these issues are resolved. That's why I was asking. Yes. I don't think this Court has the jurisdiction to consider anything of what the Florida Court did. That's for the Eleventh Circuit. And because of the totality of this appeal, ask this Court to do something which is in direct violation of 28 U.S.C. 1294, that is why we're bringing the Rule 38 motion for sanctions. The other part of this case that Appellant brought is the accusation that the Central District of California erred in affirming the arbitration award. And as you look at the briefs, the Appellant spent two and a half pages in the opening brief, two paragraphs in the reply brief, commenting on the substance of the arbitration and accuses the Court of the arbitrator, rather, of making errors in factual findings and evidentiary rulings. Federal courts have no jurisdiction to consider that sort of component of the arbitration. That's left squarely in the domain of the arbitrator, and that's what 9 U.S.C. 10 tells us. So for those reasons, Your Honors, I believe that what should be done here is the dismissal of the floor issues, the affirmation of the Central District's ruling on the entering of the award as the judgment of the Court on the arbitration, and I then request that the Court do consider and grant my motion for sanctions. Thank you. You filed that as a written motion, or you're making it today? Filing it as a written motion today. Thank you, Counsel. The central issue is if this insurance company in California commanded arbitration in California to my Florida resident client based upon an insurance contract that she was not a party to. Counsel, that is not before us, okay? What is before us is whether or not an application to enforce the award can be brought here in the Central District. You're claiming that there's not diversity jurisdiction. Counsel's correct that under Section 9, it explicitly says, application may be made to the United States Court in and for the district within which such award was made. So what we would then be looking to, with respect to the district court, is whether there was properly, you know, whether the award was proper. If there are issues pending underlying the invocation of the arbitration, that's your case in Florida. And he's told you that if we don't reach it, which I'm not saying that's precisely what we do, but most likely, then you can go back and attack, pursue your case in Florida, take your appeal to the 11th Circuit when you get a final order from that court. And the only reason I bring all the Florida cases up is that that's the basis of his petition before the Central District is what happened. Well, okay. I understand that. Okay. I hope that helps. Thank you. Thank you, Counsel. The case is submitted, and we appreciate the argument. Thank you.
judges: Gritzner, Noonan, Fisher